## THOMAS COFFIN *vs.* JOSEPH VINCENT & another.

A witness may use a memorandum to refresh his recollection, although it was not made by himself, if he saw the paper while the facts therein stated were fresh in his recollection, and he can say that he then knew they were correctly stated.

To prove the contents of a notice posted up by a field-driver, who had distrained sheep for running at large, a witness, who read it, may testify to its contents, the notice being lost, and may refresh his recollection, by referring to a proper form of such a notice, which, although not made by himself, he had compared with the notice posted up, and found to correspond.

In an action against a field-driver, who had impounded sheep for running at large contrary to law, an instruction to the jury, that, if they were satisfied that the notice of the impounding was posted up within twenty-four hours in some public place, by the defendant, containing a description of the sheep, and a statement of the time, place, and cause of impounding, they might find a verdict for the defendant, sufficiently imports, that the burden of proof is upon the defendant to show, that the notice posted up contained a statement of some particular specific cause, known to the law for which the beasts were taken up ; especially if more specific instructions on this point are not requested by the plaintiff at the trial.

A field-driver who lawfully impounds sheep running at large contrary to law, and duly posts a notice thereof, is not liable to the owner of the beasts, as a

trespasser *ab initio,* although he fails either to restore the sheep, or sell them according to law, through the default of the pound-keeper or other person, or from the insufficiency of the pound ; the animals being lawfully in the pound-keeper's custody.

TRESPASS for taking and carrying away certain sheep belonging to the plaintiff. At the trial in the court of common pleas, before *Bishop,* J., the defendants admitted the taking, and justified on the ground that they were field-drivers duly elected and qualified, and that the sheep were running at large contrary to law, and for that cause were taken up and impounded in the town-pound. To prove this they called Thomas B. Field, one of the field-drivers of Nantucket, not connected with this taking, who saw the defendants drive a large flock of sheep to the town-pound about the first week in January, 1849, and the next forenoon he saw a notice posted upon the corner of the Commercial Exchange, the usual place of posting notices. It was admitted, that the notice had been lost or destroyed. There was evidence tending to show, that upon impounding the sheep, the defendants immediately proceeded to take an account of their number and marks, and whether the notice so posted up contained a description of the sheep, and the time, place, and cause of impounding them, was a question submitted to the jury.

Said Field testified that he had been and was one of the field-drivers; that he and other field-drivers often met together in 1848, and before the impounding, to consult about their duties, that they consulted counsel and were furnished with a form of notice by counsel; that his attention was called to see if the notice in this case conformed to the form furnished, and found it did; that the notice contained a statement of the time, place, and cause of impounding, and that he paid particular attention to these things. The form, or a copy thereof, was produced by the witness. To this the plaintiff's counsel objected, but the court allowed the witness to examine it, for the purpose of refreshing his memory, and it was used for that purpose only. There was other evidence in relation to the posting up of a notice within twenty-four hours after the impounding.

To the foregoing evidence of the contents of the notice the plaintiff objected, but it was admitted by the court. Said Field further testified, that he could not state whether the cause for impounding, as stated in the notice posted up, was for going at large in the highway, or on common and unimproved lands, or both, nor could the witness state that the notice was signed by the defendants. The presiding judge instructed the jury, that, if they were satisfied that the notice of the impounding was posted up within twenty-four hours in some public place, by the defendants as field-drivers, containing a description of the sheep, and a statement of the time, place, and cause of impounding them, they might find a verdict for the defendants.

Evidence was also offered, that about eleven days after the taking of the sheep, the pound-gate was found open, and said sheep were not in the pound, and this without the knowledge or consent of the pound-keeper. It was contended on the part of the plaintiff, that if the notice posted up, was so far proved as to establish a *primâ facie* justification of the taking of said sheep, the burden of proof was still upon the defendants to prove, that said sheep had been disposed of according to law, by sale or restoration to the plaintiff, upon the payment of the lawful charges of impounding. But the judge ruled, that if through any default of the pound-keeper, or any other person than the defendants, or through the insufficiency of the pound, the sheep escaped or were rescued, the defendants were not responsible therefor. The jury returned a verdict for the defendants. And to the several rulings and instructions the plaintiff alleged exceptions.

*L. F. Brigham*, for the plaintiff.

*R. C. Pitman*, for the defendants.

MERRICK, J.    Several objections were taken by the plaintiff to the ruling of the presiding judge at the trial in the court of common pleas.

1. It is insisted that the permission given to the witness, Thomas B. Fields, to inspect the form, produced by him for the purpose of refreshing his memory, was irregular and erroneous. And it is contended that the true rule of law on

this subject restricts a witness to the examination of such papers merely as were written by himself, or by some other person with his knowledge, at or near the time when the facts recited in it occurred. But this narrow limitation is neither warranted by the authorities referred to, nor consistent with the reason upon which the practice is allowed. In 1 Greenleaf on Evidence, § 436, it is said, that it seems not to be necessary that the paper should have been made by the witness himself, nor that it should be an original writing; but it is sufficient if the witness recollects that he saw the paper while the facts were fresh in his recollection, and remembers that he then knew that the particulars therein mentioned were correctly stated. And in *Henry* v. *Lee,* 2 Chit. 124, it was determined that " if a witness, in looking upon any document, can so far refresh his memory as to recollect a circumstance, he may inspect it; and it makes no difference that it was not written by himself; for it is his recollection, and not the memorandum that is the evidence." The form, to the inspection of which the witness in the present case was permitted to resort, comes very clearly within the terms prescribed. It was in his possession, and he was well acquainted with its contents when he read the notice posted up, and he then knew that the contents of the one corresponded with those of the other. He originally procured it as a guide to himself in the discharge of his official duty, and it must from that circumstance have been well adapted to assist his memory in relation to details embraced in it, which had partially escaped from his recollection. He was, therefore, very properly permitted by the presiding judge to use it for that purpose.

2. The plaintiff next objects that the jury should have been instructed that the burden of proof was on the defendants to show that the notice posted up by them contained a statement of some particular specified cause, known to the law, for which each animal impounded was taken up. There seems, however, to be no ground for this objection, because it appears from the bill of exceptions that the instructions given were substantially to that effect. The jury were directed that before they could find a verdict for the defendants, they must be

9 *

satisfied that the notice of the impounding was posted up within twenty-four hours after the animals were put into the pound, and that it contained a statement of the time, place, and cause thereof. Such direction necessarily implied that these facts, essential to their defence and asserted by them, were to be proved by the defendants ; and was not less intel- ligible, and scarcely less direct, than if it had been said in express terms that the law imposed on them the burden of proof. Besides ; if the plaintiff supposed that any peculiarity in the trial, or in any of its circumstances, made it expedient or desirable that a more precise and exact statement of the obligation resting on the defendants in this particular should have been given to the jury, the suggestion ought to have been made to the court at the time. But as the general instruction was correct, and as it does not appear that any more definite statement was requested, the objection now made ought not to be allowed.

3. But the plaintiff contends that he is entitled to main- tain this action against the defendants, because, even if in all other respects their proceedings were strictly correct and justifiable, the sheep taken up by them were neither restored to him nor sold according to law. It is no doubt true, that any failure on their part to act in entire conformity to the provisions of the statute, and to do all that it required, would have been an abuse of the authority conferred on them by the law, and would have made them liable as trespassers *ab initio.* *Smith* v. *Gates,* 21 Pick. 55. But if all which they did was allowed and authorized by the statute, and if they omitted nothing which they could possibly have done, there could have been no failure on their part, and of course no abuse of official authority. And such appear very clearly to have been the facts. The sheep were legally taken up and regu- larly dealt with until they were delivered into the town- pound. As soon as that was done, the custody of them passed to the pound-keeper, and from thence until the arrival of the day, fixed by precise and positive provisions of law when a further official duty was to be performed by the defendants, they had no care of, and could exercise no con-

trol over the animals, and would not have been responsible for them if they had all perished in the pound for want of necessary care or of adequate supplies of food. Rev. Sts. c. 113, § 1; *Pickard* v. *Howe*, 12 Met. 198. During this intermediate period, while the defendants were neither charged with their control or superintendence, nor had any right to interfere in the management of the place where they were confined, and were guilty of no default or neglect respecting them, the sheep were rescued or escaped from the custody of the pound-keeper; so that when the day arrived on which the defendants might otherwise have legally proceeded to cause their sale, they were not to be found, and all further action in relation to them had become impossible. Mere inaction under such circumstances was no failure of duty, and of course, no abuse of authority. The instructions given by the presiding judge were therefore rightfully substituted for those asked for by the plaintiff.     *Exceptions overruled.*